**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RAYNE S. FEDDER,**

**Plaintiff,**

**v.**

**Civil Action 2:23-cv-627**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

**OHIO MEDICAL TRANSPORTATION, INC.,**

**Defendant.**

**ORDER and REPORT AND RECOMMENDATION**

Plaintiff, Rayne S. Fedder, an Ohio resident proceeding without the assistance of counsel, has submitted a request to file a civil action *in forma pauperis*. (ECF No. 1.) The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a). Further, Plaintiff's Motion to Obtain Electronic Case Filing Rights and Motion to Receive Service by Email Through the Electronic Case Filing System (ECF Nos. 2–3) are **GRANTED** to the extent that she may participate in e-filing only as to this particular case and conditional on her compliance with all applicable e-filing requirements. Plaintiff is **DIRECTED** to create a PACER account, and then complete the electronic filing registration for the Southern District of Ohio, as explained at https://pacer.uscourts.gov/register-account/non-attorney-filers-cmecf.

Plaintiff is **REMINDED** that failure to adhere to all applicable e-filing requirements will likely result in the revocation of permission to participate in e-filing. Plaintiff is specifically **CAUTIONED** that failure to update her email address and monitor her email account (including

his "junk mail" or spam folder) for court filings may result in the Court's dismissal of the action. *Cf. Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) (affirming district court's denial of motion for relief from judgment where counsel's neglect in failing to check docket until more than a month after he learned that he was not receiving notice of electronic filings because he failed to update his email address on file with the district court); *Equal Emp't Opportunity Comm'n v. Indi's Fast Food Rest., Inc.*, No. 3:15-cv-00590, 2016 WL 7473130, at *6 (W.D. Ky. Dec. 28, 2016) (noting that defense counsel represented that "he did not receive any Court-related notices or emails because they were all sent to his 'junk mail' folder" and finding that "[d]efense counsel's non-receipt of emails does not relieve his responsibility to monitor the Court's docket and keep apprised of developments within his active cases, which he failed to do here").

This matter is also before the Court for the initial screen of Plaintiff's Complaint as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's Complaint pursuant to § 1915(e)(2).

## I. BACKGROUND

Plaintiff, a transgender woman, alleges that she was employed by Defendant, Ohio Medical Transportation, Inc., as an emergency medical technician ("EMT") from March 14, 2022, through May 3, 2022. (Compl. ¶¶ 2, 201–07, ECF Nos. 1-2, 1-3.) Plaintiff alleges that she was subjected to harassment and disparate treatment by her coworkers and supervisors, in the form of, among other things, having to listen to racist, ableist, misogynistic, and queermisic

slurs; patronizing suggestions about her career, and discipline regarding her social media activity. (*See* Compl., *passim*.) In particular, Plaintiff was disciplined for posting material critical of law enforcement and for a post that made a joke referencing a conversation Plaintiff had overheard between other coworkers. (*Id.* at ¶¶ 18, 43, 48.)

On the evening of April 19, 2022, Plaintiff and her partner were dispatched to O'Bleness Memorial Hospital to transport a psychiatric patient to Columbus Springs Dublin. (*Id.* at ¶¶ 104, 110.) Plaintiff felt that O'Bleness staff were not performing their jobs properly and voiced criticisms of the use of an armed security officer ("asking what he even needed that gun holstered to his hip for, and quipp[ing] that he probably did not know how to operate it") and the poor quality of the paperwork provided by the nursing staff ("Plaintiff does not remember saying that the report from the charge nurse about the patient was 'shitty,' though Plaintiff does concede that the sentiment was there."). (*Id.* at ¶¶ 115, 185.) Plaintiff also alleges that the desk attendant asked how Plaintiff was doing, and Plaintiff said "something about how she would be doing much better if she passed or if she did not work with a bunch of creepy bigots, or something of the sort." (*Id.* at ¶ 117.) After some resistance by the patient, Plaintiff, her partner, and other O'Blenness staff were able to buckle the patient to a stretcher and the patient was transported without further incident. (*Id.* at ¶¶ 127–137.)

On the morning of April 20, 2022, an O'Blenness manager contacted Defendant to complain about Plaintiff's "unprofessional" and "disrespectful" behavior. (*Id.* at ¶¶ 142–44, 151.) The O'Blenness manager reported that a doctor present during Plaintiff's pickup felt that Plaintiff might need a "blue gown" (*i.e.*, involuntary hospitalization for a psychiatric emergency) because Plaintiff was making "off the wall comments" and saying "unnecessary" and "oddly inappropriate things." (*Id.* at ¶ 305.) A nurse who was present during Plaintiff's pickup also

emailed Defendant, stating that Plaintiff had been "rude an inappropriate" and exhibited "rude, bizarre, and erratic behavior," and that the nurse "might have reservations about releasing a patient" to Plaintiff. (*Id.* at ¶ 306.)

Later that morning, Defendant placed Plaintiff on administrative leave with pay pending Defendant's investigation of the O'Blenness staff's complaints. (*Id.* at ¶ 168–69.) On May 3, 2022, Plaintiff attended a meeting at Defendant's office, during which Defendant terminated her employment based on the complaint by O'Blenness staff. (*Id.* at ¶¶ 201–07.)

Plaintiff filed a charge with the EEOC, alleging harassment and disparate treatment discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and amending the charge to add a "regarded-as" disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"). (Amended Charge of Discrimination, ECF No. 1-4, PAGEID #114.) Plaintiff obtained a Right to Sue letter on November 21, 2022. (ECF No. 1-4, PAGEID #115.) Plaintiff commenced this lawsuit on February 14, 2023. (ECF No. 1.)

## II. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

* * *

(B) the action or appeal—

(i) is frivolous or malicious; [or]

(ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. ANALYSIS

Plaintiff advances claims for hostile work environment and disparate treatment, both on the basis of sex, under Title VII, as well a claim for disability discrimination, on the basis of being regarded as having a substantial mental or behavioral health impairment, under the ADA. The undersigned considers each claim in turn.

### A. Plaintiff has not sufficiently pleaded a Title VII hostile work environment claim.

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). To establish a prima facie case of a hostile work environment, a plaintiff must demonstrate that (1) she is a member of a protected class, (2) she was subjected to harassment, either through words or actions, based on her membership in the protected class, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

Turning first to employer liability, employers can be liable for the harassment of their employees in two ways: (1) if the harasser is the plaintiff's supervisor, the employer is vicariously liable through principles of agency and respondeat superior; or (2) if the harasser is the plaintiff's coworker, without supervisory power over the plaintiff, the employer may be directly liable if the employer was negligent with respect to the offensive behavior. *Vance v. Ball State Univ.*, 570 U.S. 421, 427–28 (2013). Here, Plaintiff alleges harassment by both her supervisors and her coworkers; however, Plaintiff does not allege that she ever reported her coworker's harassment to management. Indeed, Plaintiff alleges that "she was reluctant to report events that were part of the hostile work environment she worked in" because she feared her coworkers would dislike her if she reported their harassment. (Compl. ¶ 331, ECF No. 1-3.) Without alleging that Defendant knew or should have known about Plaintiffs' coworkers' harassment, Plaintiff cannot show that Defendant was negligent in failing to correct it. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008) (coworker harassment claims require that the employer knew or should have known of the harassment). Plaintiff's harassment claim must therefore be limited to instances of harassment by her supervisors.

When considering only Plaintiff's alleged supervisor harassment on the basis of her sex, this harassment is not sufficiently severe or pervasive to create an abusive working environment. There are no hard and fast rules as to how much harassment is enough harassment to state a claim under Title VII. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005). But the Supreme Court "has provided a non-exhaustive list of factors to consider when deciding whether a hostile work environment exists, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance.'" *Grace*, 521 F.3d at 678 (quoting *Harris,* 510 U.S. at 23).

Here, Plaintiff's only allegations that her supervisors harassed her on the basis of her sex are that (1) a supervisor told her, in response to her plans to become a paramedic and eventually a nurse, and to seek out emergency EMT work, that Plaintiff should stay an EMT longer so that she can learn to give quality CPR, and discouraged Plaintiff from working emergency EMT shifts in a particular county that the supervisor described as being "full of 'tough guys'" (Compl. ¶¶ 9–10, 360, ECF No. 1-2), (2) that a particular supervisor unnecessarily and unusually sat in on disciplinary meetings with Plaintiff, which Plaintiff alleges is infantilizing and intimidating in a way characteristic of sex-based discrimination (*Id.* at ¶¶ 44, 66, 77, 93, 360), and (3) that a supervisor implied, when disciplining Plaintiff concerning a social media post, that the fictional abusive boyfriend in the post "was more worthy of respect and dignified treatment" than Plaintiff (*Id.* at ¶¶ 46, 360.)[1] Even liberally construing these incidents as constituting harassment on the basis of sex, they cannot be characterized as frequent or severe; nor are they physically threatening or humiliating; nor would these three incidents unreasonably interfere with Plaintiff's work performance. *See*, *e.g.*, *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 570 (6th Cir. 2021) (finding five incidents of verbal comments about the plaintiff's physical appearance, including her breasts, insufficient to satisfy the "severe or pervasive" element of her Title VII

[1] Plaintiff summarizes additional incidents of harassment in ¶ 360 of her Complaint; however, the additional incidents were either perpetrated by her coworkers (not her supervisors) or did not appear to be on the basis of sex. In particular, Plaintiff alleges that one of her supervisors told Plaintiff's EMT partners to "keep an open mind" when working with Plaintiff, which Plaintiff construes as the supervisor "outing" Plaintiff as transgender and "othering" her to her coworkers. (Compl. ¶¶ 25, 37, 360.) But the mere suggestion to "keep an open mind" when working with Plaintiff does not relate to her sex or transgender status and cannot be considered sex-based harassment.

hostile work environment claim). Accordingly, the undersigned recommends that Plaintiff's Title VII hostile work environment claim be **DISMISSED**.

**B. Plaintiff has not sufficiently pleaded a Title VII disparate treatment claim.**

Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of discrimination on the basis of her sex or transgender status, Plaintiff must prove (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class. *See Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here, Plaintiff alleges she was terminated on the basis of her sex and/or transgender status. But Plaintiff cannot satisfy the fourth element of her prima facie case, because she has not alleged that any similarly situated male or cisgender employees were treated more favorably. Indeed, Defendant's stated basis for terminating Plaintiff's employment was the O'Blenness staff's complaint regarding Plaintiff's rude, unprofessional, and erratic behavior. Plaintiff has not identified any other employees who were the subject of third-party complaints. And although Plaintiff alleges that both she and several of her coworkers made verbal comments or social media posts that others found offensive, and that she alone was singled out for discipline, Plaintiff does not allege that she or anyone else ever complained about her coworkers' offensive comments or posts. In contrast, Defendant received at least one complaint about Plaintiffs' social media posts concerning law enforcement and an overheard conversation between Plaintiff's coworkers. Because Plaintiff has failed to identify any similarly situated employees outside her

protected class who were treated more favorably, the undersigned recommends that Plaintiff's Title VII disparate treatment claim be **DISMISSED**.

**C. Plaintiff has not sufficiently pleaded an ADA disability discrimination claim.**

To make out a prima facie case for her "regarded-as" disability discrimination claim, Plaintiff must show that (1) Defendant treated her as having an impairment that substantially limits one or more of her major life activities, (2) that she was otherwise qualified to hold her EMT position, and (3) that her employment was terminated because Defendant regarded her as disabled. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999).

Plaintiff alleges that Defendant regarded her as having a substantial mental/behavioral health impairment due to the O'Blenness doctor's opinion that Plaintiff might need a "blue gown"—*i.e.*, Plaintiff might need to be involuntarily hospitalized due to a psychiatric emergency. Even assuming that Defendant credited the O'Blenness doctor's opinion, "a defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled." *Sullivan*, 197 F.3d at 810. Even an employer's request that an employee undergo a medical exam "may signal that an employee's job performance is suffering, but that cannot itself prove perception of a disability because it does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities." *Id.* at 811. Here, Plaintiff has alleged at most that Defendant believed Plaintiff may have been undergoing an acute psychiatric episode during her April 19, 2022 pickup at O'Blenness, but this does not amount to an allegation that Defendant perceived her as disabled. Accordingly, the undersigned recommends that Plaintiff's ADA disability discrimination claim be **DISMISSED**.

## IV. DISPOSITION

For the reasons set forth above, Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a) (ECF No. 1) is **GRANTED**. Moreover, Plaintiff's Motion to Obtain Electronic Case Filing Rights and Motion to Receive Service by Email Through the Electronic Case Filing System (ECF Nos. 2–3) are **GRANTED** subject to the limitations set forth above. It is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE