UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RAYNE FEDDER,**

        **Plaintiff,**    :

  v.                                   **Case No. 2:23-cv-627**
                                         **Judge Sarah D. Morrison,**
                                         **Magistrate Judge Chelsey M.**
**OHIO MEDICAL**                        **Vascura**
**TRANSPORTATION, INC.,**   :

        **Defendant.**

## ORDER

      Plaintiff Rayne Fedder, a former employee of Defendant Ohio Medical Transportation ("OMT"), brought this suit *in forma pauperis,* alleging that Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). After screening the complaint pursuant to 28 U.S.C § 1915(e)(2), the Magistrate Judge issued a combined Order and Report and Recommendation, recommending dismissal of the Title VII claims and ordering that Plaintiff may proceed on her "regarded as" ADA claim. (ECF No. 16.) Plaintiff objects to the former (ECF Nos. 19, 20), and Defendant seeks reconsideration of the latter (ECF No. 18).[1]

---

[1] The filing is styled as "Defendant's Partial Objection to the Magistrate's Report and Recommendation." However, Defendant is actually seeking reconsideration of a non-dispositive order by the Magistrate Judge, so the Court construes it as a motion for reconsideration.

Additionally, Defendant filed a combined Motion to Dismiss for failure to join a party under Rule 19 and for failure to state an ADA claim. (ECF No. 21.) Plaintiff responded in opposition. (ECF No. 22.)

For the reasons that follow, Plaintiff's objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation is **ADOPTED** and **AFFIRMED**; Defendant's Combined Motion to Dismiss is **GRANTED** in part and **DENIED** in part and its Motion for Reconsideration is **DENIED** as moot.

## I. BACKGROUND

The following draws from the factual allegations in the Complaint. Plaintiff's allegations are considered as true for purposes of this Order, but her legal assertions are not. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Plaintiff, a transgender woman, alleges that she was employed by OMT as an emergency medical technician from March 14, 2022, through May 3, 2022. (Compl., ECF No. 15, ¶¶ 1–2, 201–07.) During pre-employment screening, Plaintiff informed her supervisor of her mental health issues, which include depression, anxiety, and PTSD. (¶ 4.) She also reported that she was receiving hormone replacement therapy. (*Id.*)

Plaintiff alleges that she suffered discrimination and harassment after she reported her impairments and status as a transgender woman. More specifically, she claims that her coworkers made discriminatory statements about her gender identity. (¶¶ 23–30, 104–05.) She also claims that she was mistreated by Director of Operations James Gruenberg, who told her coworkers to "keep an open mind" about

2

her and other transgender people. (¶¶ 9, 37.) She alleges that other trainees, including cisgender males, were not subject to such "infantilizing treatment." (¶ 14.)

After her training concluded, Plaintiff alleges that she continued to be treated differently than cisgender male coworkers, in particular Stuart Williams. According to Plaintiff, she was disciplined for making derogatory posts about her coworkers and law enforcement on her public Facebook page. (¶¶ 43–67, 77–85, 95–99.) By comparison, Williams allegedly wore a "Secret Jewish Space Laser Corps" patch at work but was never disciplined for this message. (¶ 31.) Plaintiff claims Williams's patch referenced an anti-Semitic conspiracy theory popularized by U.S. Representative Marjorie Taylor Greene. (*Id.*)

Approximately a month into Plaintiff's employment, staff members at O'Bleness Memorial Hospital filed an incident report stating that she had behaved unprofessionally while on site. (¶¶ 151, 177–80, 306.) Plaintiff was terminated approximately two weeks later on May 3, 2022. (¶ 212.)

Plaintiff then filed a charge with the Equal Employment Opportunity Commission, alleging sex and disability discrimination. After receiving her right to sue letter, she filed the instant suit.

## II. OBJECTIONS TO THE REPORT AND RECOMMENDATION

### A. Standard of Review

If a party objects within the allotted time to a Report and Recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may

3

accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(b)(1).

### B. Analysis

Plaintiff makes overlapping and duplicative objections to the Report and Recommendation but, in sum, she complains that the Magistrate Judge did not properly analyze her hostile work environment claim or her disparate treatment claim under Title VII.

#### 1. Hostile Work Environment Claim

Plaintiff argues that the Magistrate Judge recommended dismissal of her hostile work environment claim in error. She argues that her discipline for online activity, her supervisor's "infantilizing" conduct, and inappropriate comments and questions by her coworkers are sufficient to state a claim.

When a workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter conditions of the plaintiff's employment, a hostile work environment ensues. *Scott v. Central Sch. Supply Co.*, No. 96-5238, 1997 WL 420505 at *3 (6th Cir. July 8, 1997) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To establish a *prima facie* case for a hostile work environment claim, the plaintiff must ultimately show (1) she was a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and (5) the employer is liable for the harassment. *Doe v. City of Detroit, Mich.* 3 F.4th 294, 300 (6th Cir. 2021). However, to plead such a claim, the

4

plaintiff "need not mechanically recite these elements; instead, she must allege a sufficient factual basis for her claim" so that the Court may use its "judicial experience and common sense" to draw a "reasonable inference" of discrimination. *Mitchell v. Ohio State Univ.*, No. 2:19-cv-4162, 2020 WL 5250459 at *4 (S.D. Ohio, Sept. 3, 2020).

Insufficiencies regarding elements (3) and (5) informed the Magistrate Judge's recommendation to dismiss Plaintiff's hostile work environment claim.

### i. Discipline for online activity

The Magistrate Judge found that Plaintiff's discipline for her online activity did not contribute to her alleged hostile work environment because she failed to allege that it was based on her gender. Plaintiff argues that this is incorrect because her discipline occurred after her supervisors "cyberstalked" her, which she says is a form of gender-based violence. (ECF No. 19, PAGEID #577.)

"Cyberstalking" is "the use of electronic communication to harass or threaten someone with physical harm." Cyberstalking, MERRIAM-WEBSTER.COM LEGAL DICTIONARY, https://www.merriam-webster.com/legal/cyberstalking (accessed Nov. 27, 2023). Nothing in this definition makes cyberstalking an activity specifically geared towards members of a particular sex, as opposed to some other category. Moreover, Plaintiff's argument that her discipline was because of her sex is undermined by her own allegations, which state that she was disciplined because she made posts that were rude to coworkers and critical of police. (Compl., at ¶¶ 18–

5

20, 41–84, 97–103.) Thus, Plaintiff does not plausibly allege that the discipline she received for her online activity was connected to her gender.

### ii. Statements by supervisors

The Magistrate Judge found that Plaintiff's allegations do not create a plausible inference that her supervisor's statements were motivated by transgender animus. Plaintiff objects, arguing that the Magistrate Judge misinterpreted the law. (ECF No. 19, PAGEID # 570.) But whether a statement supports an inference of animus is a determination of fact, not law. Plaintiff alleges that her supervisor subjected her to "infantilizing treatment" during training by saying she should be an EMT longer to learn how to provide quality CPR. (Compl., at ¶ 14.) She further alleges that he told her coworkers to "keep an open mind" about her and other transgender individuals. (Compl. at ¶¶ 9, 25.) These allegations do not create a plausible inference that the supervisor's statements were motivated by transgender animus. Quite the opposite. Her supervisor's statements indicate that he wanted her to succeed and that was concerned about the possibility of transgender animus and wanted to guard against that possibility.

### iii. Statements by coworkers

Next, the Magistrate Judge found that Plaintiff's allegations were insufficient to support an inference that her coworkers' statements were motivated by anti-transgender sentiment and, even if they were, that her employer was aware of the statements. Plaintiff argues this is incorrect because her coworkers' statements

6

were discriminatory and made with such frequency that her employer had constructive notice. (ECF No. 19, PAGEID # 574–75.)

To state a claim based on discriminatory statements by coworkers, Plaintiff must allege that her employer "knew or should have known" about their behavior and "failed to implement prompt and appropriate corrective action." *Doe*, 3 F.4th at 301. Where a plaintiff fails to report harassment by coworkers, her employer is liable only if the employer learned of the harassment though other means or if the harassment was so pervasive that the employer should have known. *See Wanchik v. Great Lakes Health Plan, Inc.*, 6 Fed. App'x 252, 264 (6th Cir. 2001) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999)).

Plaintiff cites a handful of instances where coworkers asked her inappropriate questions in private (Compl. at ¶¶ 23–27, 105) and made inappropriate comments in front of others. (*Id.* at ¶¶ 30, 88.) But she does not allege that she, or anyone else, reported this alleged harassment. While some of these remarks and questions may have been hurtful or inappropriate, Plaintiff does not plausibly allege that these interactions were so severe or pervasive that Defendant should have known about them. Nor does she allege how her employer could have learned of the alleged harassment through other means.

Accordingly, to the extent Plaintiff objects to the dismissal of her hostile work environment claim, her objection is **OVERRULED.**

### 2. Disparate Treatment Claim

Plaintiff next objects to the recommended dismissal of her disparate treatment claim, first arguing that the Magistrate Judge failed to analyze whether

7

she was replaced by someone outside her protected class. (ECF No. 19, PAGEID # 575.) This argument is readily disposed of because Plaintiff does not allege that she was replaced by a person outside of her protected class. As such, the following analysis will focus on her second argument that she that she was treated differently than her male coworkers.

To establish a *prima facie* case for her discrimination claim, Plaintiff must ultimately show that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was treated differently from similarly situated employees outside of her protected class. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 391 (6th Cir. 2008). As stated, Plaintiff need not mechanically recite these elements, but her allegations must provide a sufficient factual basis upon which the Court can draw a reasonable inference of discrimination. The Magistrate Judge concluded that Plaintiff's factual allegations were insufficient with regard to elements (2) and (4) and that there was no reasonable inference of discrimination.

An adverse employment action is one that "constitutes a significant change in employment status," including hiring, firing, reassignment, or a decision causing a change in benefits. *White*, 533 F.2d at 402 (citing *Burlington Indus. Inc., v. Ellerth*, 524 US. 742, 761 (1998). In general, an unfavorable performance evaluation is not an adverse action unless it negatively impacts the employee's pay or opportunities for advancement. *Id.*

8

A comparator is similarly situated if (1) he dealt with the same supervisor, (2) he was subject to the same standards as the plaintiff, and (3) he has engaged in the same conduct without such differentiating circumstances that the treatment he received is distinguishable. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). To be similarly situated, a comparator must be similar in all relevant aspects, which may include receiving complaints or violating company policy. *See Corell v. CSX* Transp., 378 Fed. App'x 496, 502 (6th Cir. 2010). The Court may also consider any other factor it deems relevant under the circumstances. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019).

Plaintiff first argues that she was treated differently than her cisgender coworker Williams, who was present at the incident that led to her termination but was not terminated. However, unlike with Plaintiff, there is no allegation that Williams engaged in rude behavior or that anyone at O'Bleness Memorial Hospital filed an incident report about him. As such, he is not a suitable comparator for purposes of her discriminatory discharge claim.

Plaintiff also claims that she was singled out through the company's social media policy. Even assuming that the discipline she received for her policy violation constituted an adverse action, she did not identify any cisgender employees who engaged in similar behavior on social media and were treated differently for it. The closest she gets to identifying such an employee is Williams, who she alleges wore an offensive arm patch at work. If true, Williams may have violated an office policy,

9

however, he did not violate the *social media* policy and is therefore not a suitable comparator.

Finally, Plaintiff alleges that she was subjected to "infantilizing treatment" during training while a cisgender male EMT trainee was not. (Compl. at ¶¶ 6, 8, 14.) Even if this male trainee were a suitable comparator, petty slights and workplace disagreements are not the sort of conduct that constitutes an adverse action.

Accordingly, to the extent Plaintiff objects to the dismissal of her discrimination claim, her objection is **OVERRULED.**

### III.   COMBINED MOTION TO DISMISS

#### A.   12(b)(7) Motion to Dismiss for Failure to Join a Party under Rule 19

Defendant first moves to dismiss the Complaint under Rule 12(b)(7) because Plaintiff sued OMT rather than her actual employer CEMS of Ohio d/b/a MedCare ("MedCare"), a wholly owned subsidiary of OMT. (ECF No. 21, PAGEID # 601–03.) Although its Motion is premised on MedCare being an indispensable party under Rule 19, Defendant recognizes that MedCare could be substituted as the appropriate defendant without depriving the Court of subject-matter jurisdiction. Thus, this is an instance of misjoinder, not failure to add an indispensable party.

Misjoinder occurs when the plaintiff makes a simple mistake, like naming a parent company when a subsidiary is the true defendant. *See Comment on Rule 21*, 5 Bender's Fed. Prac. Forms (2023). "Misjoinder is not a ground for dismissing an

10

action." Fed R. Civ. P. 21. Instead, the Court "may, at any time and on just terms, add or drop a party." *Id.*

Accordingly, Defendant's 12(b)(7) Motion to Dismiss is **DENIED** and Ohio Medical Transportation, Inc. is **DROPPED** and CEMS of Ohio, Inc. d/b/a/ MedCare ("MedCare") is **ADDED** as defendant in this suit.

### B.   12(b)(6) Motion to Dismiss for Failure to State a Claim

Defendant next argues that Plaintiff's "regarded as" ADA claim should be dismissed because she does not plausibly allege that her employer actually regarded her as disabled, nor does she allege that any perceived disability was the but for cause for her termination. (ECF No. 21, PAGEID # 604–05; ECF No. 18, PAGEID # 562–67.)

#### 1.   Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court explained this requirement:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it

11

>asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

These standards apply equally when the plaintiff is *pro se*. Although a *pro se* litigant is entitled to a liberal construction of her pleadings and filings, she still must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### 2. Analysis

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) she was, or was regarded as, disabled, (2) she was qualified to perform the job's requirements, and (3) she suffered an adverse employment action because of her disability or perceived impairment. *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). A "regarded as" claim protects

12

employees who are "perfectly able to perform a job but are rejected. . . because of the myths, fears, and stereotypes associated with disabilities." *Whitfield v. Tenn.,* 639 F.3d 253, 258–59 (6th Cir. 2011). "Even if an employee establishes that their employer 'regarded' them as disabled. . ., the employee must still show that their employer discharged them (or took some other form of adverse employment action against them) because of, or 'but-for,' their actual or perceived physical or mental impairment." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) (quoting *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc)).

Here, Plaintiff alleges that she told Defendant she was receiving hormone replacement therapy and that she was diagnosed with and receiving treatment for "depression, anxiety, and PTSD." (Am. Compl., ECF No. 15, ¶ 4.) She asserts that she was terminated "at least in part" due to these perceived impairments. (*Id.* at ¶¶ 326–27.) Even assuming that this is sufficient to meet the "but for" causation standard for an ADA claim, this assertion is belied by Plaintiff's account of her time at MedCare. She alleges that her employer was made aware of her mental health diagnoses before she was even hired. It was only after Plaintiff's outburst at O'Bleness Memorial Hospital and her conduct on social media that she was terminated for behavioral problems. In light of these allegations, Plaintiff has failed to plausibly allege that she was terminated because of her perceived impairment as opposed to her poor performance or some other reason.

13

Accordingly, Defendant's 12(b)(6) Motion to Dismiss Plaintiff's ADA claim against MedCare is **GRANTED**.

## IV. MOTION FOR RECONSIDERATION

Defendant makes the same argument in its Motion for Reconsideration as it did in its 12(b)(6) Motion to Dismiss; the only difference between the two motions is that the former is subject to a more stringent standard of review. Having dismissed Plaintiff's ADA claim, Defendant's Motion for Reconsideration is **DENIED** as moot.

## V. CONCLUSION

For the reasons stated herein, Plaintiff's objections are **OVERRULED**. (ECF Nos. 19, 20.) The Court **ADOPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation. (ECF No. 16.) Plaintiff's Title VII claims are **DISMISSED** for failure to state a claim.

Additionally, Defendant's Combined Motion to Dismiss is **GRANTED** in part and **DENIED** in part. (ECF No. 21.) Defendant Ohio Medical Transportation, Inc. is **DROPPED** and CEMS of Ohio, Inc. d/b/a/ MedCare is **ADDED** as defendant in this suit. Plaintiff's ADA claim against MedCare is **DISMISSED** for failure to state a claim. Defendant's Motion for Reconsideration is therefore **DENIED** as moot. (ECF No. 18.)

The Clerk is **DIRECTED** to **TERMINATE** this case on the docket.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**